**LEE LITIGATION GROUP, PLLC**
C.K. Lee (CL 4086)
Anne Seelig (AS 3976)
148 West 24th Street, Eighth Floor
New York, New York 10011
Tel.: (212) 465-1188
Fax: (212) 465-1181
*Attorneys for Plaintiff,*
*FLSA Collective Plaintiffs,*
*and the Class*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

ELEONOR REYES, *on behalf of himself,*
*FLSA Collective Plaintiffs, and the Class*,

               Plaintiff,

     v.

EMPIRE SUPER BUILDERS, INC,
EMPIRE SUPER STRUCTURE INC,
LUXURY MANAGEMENT NY, INC., and
MARLIN ORLENY RAMOS CALIX SR,

               Defendants.

---

Case No.:

**CLASS AND COLLECTIVE ACTION COMPLAINT**

Jury Trial Demanded

---

       Plaintiff, ELEONOR REYES ("Plaintiff"), on behalf of himself and others similarly situated, by and through his undersigned attorneys, hereby files this Class and Collective Action Complaint against Defendants, EMPIRE SUPER BUILDERS, INC, EMPIRE SUPER STRUCTURE INC, LUXURY MANAGEMENT NY, INC. ("Corporate Defendants"), and MARLIN ORLENY RAMOS CALIX SR ("Individual Defendant RAMOS" and together with Corporate Defendants, "Defendants") and states as follows:

## INTRODUCTION

1.      Plaintiff alleges that, pursuant to the Fair Labor Standards Act, as amended, 29 U.S.C. §§ 201 *et seq.* ("FLSA"), he is entitled to recover from Defendants: (1) unpaid overtime wages, due to a fixed salary; (2) unpaid wages; (3) liquidated damages and (4) attorneys' fees and costs.

2.      Plaintiff further alleges that, pursuant to the New York Labor Law ("NYLL"), he is entitled to recover from Defendants: (1) unpaid overtime wages, due to a fixed salary; (2) unpaid wages; (3) compensation for late payment of wages; (4) statutory penalties; (5) liquidated damages; and (6) attorneys' fees and costs.

## JURISDICTION AND VENUE

3.      This Court has jurisdiction over this controversy pursuant to 29 U.S.C. § 216(b), 28 U.S.C. §§ 1331, 1337 and 1343, and has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

4.      Venue is proper in the Southern District pursuant to 28 U.S.C. § 1391.

## PARTIES

5.      Plaintiff ELEONOR REYES is a resident of Bronx County, New York.

6.      Corporate Defendant EMPIRE SUPER BUILDERS, INC is a domestic business corporation organized under the laws of the State of New York, with its principal place of business and address for service of process both located at 131-13 220th Street, Apartment 2, Laurelton, NY 11413, the current residence of Individual Defendant RAMOS.

7.      Corporate Defendant EMPIRE SUPER STRUCTURE INC is a domestic business corporation organized under the laws of the State of New York, with its principal place of business and address for service of process both located at 131-13 220th Street, Apartment 2, Laurelton, NY

11413 (the current residence of Individual Defendant RAMOS), the same address as Corporate Defendant EMPIRE SUPER BUILDERS, INC.

8.      Corporate Defendant LUXURY MANAGEMENT NY, INC. is a domestic business corporation organized under the laws of the State of New York, with its principal place of business located at 131-13 220th Street, Apartment 2, Laurelton, NY 11413 (the current residence of Individual Defendant RAMOS), the same address as Corporate Defendants EMPIRE SUPER BUILDERS, INC and EMPIRE SUPER STRUCTURE INC, and an address for service of process located at 146-08 130th Avenue, Queens, NY 11436.

9.      Individual Defendant RAMOS is the owner and operator of all Corporate Defendants. At all relevant times, Individual Defendant RAMOS exercised control over the employment terms and conditions of Plaintiff, FLSA Collective Plaintiffs, and Class Members. At all relevant times, Individual Defendant RAMOS had and exercised the power to (and also delegate to managers and supervisors the power to) (i) fire and hire, (ii) determine rate and method of pay, (iii) determine work schedules and (iv) otherwise affect the quality of employment of Plaintiff, FLSA Collective Plaintiffs, and Class Members. At all times, employees could complain to Individual Defendant RAMOS directly regarding any of the terms of their employments, and Individual Defendant RAMOS would have the authority to effect any changes to the quality and terms of employees' employment. Individual Defendant RAMOS directly reprimanded any employee who did not perform his duties correctly. Individual Defendant RAMOS exercised functional control over the business and financial operations of all Corporate Defendants. Individual Defendant RAMOS had the power and authority to supervise and control supervisors of Plaintiff, FLSA Collective Plaintiffs, and Class Members and could reprimand all employees.

Individual Defendant RAMOS interviewed and hired Plaintiff. During his interview, Individual Defendant RAMOS directly told Plaintiff that he is the owner of Luxury Management.

10.     TransUnion's TLOxp reports confirm that Individual Defendant RAMOS is associated with Corporate Defendants EMPIRE SUPER BUILDERS, INC, and EMPIRE SUPER STRUCTURE INC. *See* **Exhibit A.** All Corporate Defendants are headquartered at the residence of Individual Defendant RAMOS: 131-13 220th Street, Apartment 2, Laurelton, NY 11413. *See Id.*

11.     Defendants collectively maintain a single, shared, workforce that performs labor for any of the Defendants' contracts and/or subcontracts.

12.     Defendants contract and subcontract construction projects. Each project Defendants contract and subcontract is done through one of the Corporate Defendants, and any employee of Defendants' shared workforce may be assigned to a jobsite that is contracted or subcontracted through any of the Corporate Defendants. Additionally, Corporate Defendants often contract or subcontract projects amongst each other. Plaintiff, FLSA Collective Plaintiffs, and Class Members performed labor on construction projects that were contracted and/or subcontracted by all Corporate Defendants throughout their employments with Corporate Defendants.

13.     Defendants have common policies and practices as to wage and hour policies, and share control and liability over Defendants' employees, including Plaintiff, FLSA Collective Plaintiffs, and Class Members.

14.     At all relevant times, each Corporate Defendant had gross annual revenues in excess of $500,000.00 and engaged in interstate commerce. Therefore, at all relevant times, each Corporate Defendant was and continues to be an "enterprise engaged in commerce" within the meaning of the FLSA, the New York Labor Law, and all regulations thereunder.

15.     At all relevant times, each Corporate Defendant engaged in interstate commerce. Each Corporate Defendant utilizes equipment, utilities, tools, materials, and vehicles which were imported into New York, purchased by Defendants from vendors located both within and outside of New York State, for all operations of their business. Defendants required Plaintiff and other employees to engage in labor using these imported utilities, equipment, tools, materials, and vehicles for all construction projects.

16.     At all relevant times, the work performed by Plaintiff, FLSA Collective Plaintiffs, and Class Members was directly essential to the business operated by Defendants.

17.     At all relevant times, Defendants employed at least 40 employees as defined under the NYLL.

## FLSA COLLECTIVE ACTION ALLEGATIONS

18.     Plaintiff brings claims for relief as a collective action pursuant to FLSA Section 16(b), 29 U.S.C. § 216(b), on behalf of all non-exempt employees (including laborers, construction workers, contractors, apprentices, carpenters, electricians, painters, estimators, surveyors, pipefitters, welders, roofers, ironworkers, operators, installers, plumbers, engineers, specialists, and foremen, among others) employed by Defendants on or after the date that is six years before the filing of the Complaint in this case as defined herein ("FLSA Collective Plaintiffs").

19.     At all relevant times, Plaintiff and FLSA Collective Plaintiffs are and have been similarly situated, have had substantially similar job requirements and pay provisions, and are and have been subjected to Defendants' decisions, policies, plans, programs, practices, procedures, protocols, routines, and rules, all culminating in a willful failure and refusal to (i) pay the proper wages, including proper overtime premiums at the rate of one and one-half times the regular rate for work in excess of forty (40) hours per workweek, due to compensating non-exempt employees

at a fixed salary rate regardless of overtime hours worked and (ii) pay them entirely for some workweeks. The claims of Plaintiff stated herein are essentially the same as those of FLSA Collective Plaintiffs.

20.    The claims for relief are properly brought under and maintained as an opt-in collective action pursuant to § 16(b) of the FLSA, 29 U.S.C. § 216(b). The FLSA Collective Plaintiffs are readily ascertainable. For purposes of notice and other purposes related to this action, their names and addresses are readily available from Defendants. Notice can be provided to the FLSA Collective Plaintiffs via first class mail to the last address known to Defendants.

## RULE 23 CLASS ALLEGATIONS

21.    Plaintiff brings claims for relief pursuant to the Federal Rules of Civil Procedure ("F.R.C.P.") Rule 23, on behalf of all non-exempt employees (including laborers, construction workers, contractors, apprentices, carpenters, electricians, painters, estimators, surveyors, pipefitters, welders, roofers, ironworkers, operators, installers, plumbers, engineers, specialists, and foremen, among others) employed by Defendants on or after the date that is six years before the filing of the Complaint in this case as defined herein (the "Class" or "Class Members").

22.    The Class Members are readily ascertainable. The number and identity of the Class Members are determinable from the records of Defendants. The hours assigned and worked, the position held, and rates of pay for each Class Member are also determinable from Defendants' records. For purposes of notice and other purposes related to this action, their names and addresses are readily available from Defendants. Notice can be provided by means permissible under F.R.C.P. 23.

23.    The proposed Class is so numerous that a joinder of all members is impracticable, and the disposition of their claims as a class will benefit the parties and the Court. Although the

precise number of such persons is unknown, the facts on which the calculation of that number are presently within the sole control of Defendants, there is no doubt that there are more than forty (40) members of the Class.

24.     Plaintiff's claims are typical of those claims, which could be alleged by any member of the Class, and the relief sought is typical of the relief, which would be sought by each member of the Class in separate actions. All the Class Members were subject to the same corporate practices of Defendants, as alleged herein, of (i) failing to pay wages, (ii) failing to pay wages, including overtime premium at the rate of one and one-half times the regular rate for work in excess of forty (40) hours per workweek due to fixed salary, (iii) failing to timely compensate on a weekly basis, (iv) failing to provide proper wage statements per requirements of the New York Labor Law, and (v) failing to provide proper wage and hour notices per requirements of the New York Labor Law. Defendants' corporate-wide policies and practices affected all Class Members similarly, and Defendants benefited from the same type of unfair and/or wrongful acts as to each Class Member. Plaintiff and other Class members sustained similar losses, injuries and damages arising from the same unlawful policies, practices and procedures.

25.     Plaintiff is able to fairly and adequately protect the interests of the Class and have no interests antagonistic to the Class. Plaintiff is represented by attorneys who are experienced and competent in both class action litigation and employment litigation and have previously represented plaintiffs in wage and hour cases.

26.     A class action is superior to other available methods for the fair and efficient adjudication of the controversy – particularly in the context of the wage and hour litigation where individual class members lack the financial resources to vigorously prosecute a lawsuit against corporate defendants. Class action treatment will permit a large number of similarly situated

persons to prosecute common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of efforts and expense that numerous individual actions engender. Because losses, injuries and damages suffered by each of the individual Class Members are small in the sense pertinent to a class action analysis, the expenses and burden of individual litigation would make it extremely difficult or impossible for the individual Class Members to redress the wrongs done to them. On the other hand, important public interests will be served by addressing the matter as a class action. The adjudication of individual litigation claims would result in a great expenditure of Court and public resources; however, treating the claims as a class action would result in a significant saving of these costs. The prosecution of separate actions by individual members of the Class would create a risk of inconsistent and/or varying adjudications with respect to the individual members of the Class, establishing incompatible standards of conduct for Defendants and resulting in the impairment of class members' rights and the disposition of their interests through actions to which they were not parties. The issues in this action can be decided by means of common, class-wide proof. In addition, if appropriate, the Court can, and is empowered to, fashion methods to efficiently manage this action as a class action.

27.    Defendants and other employers throughout the state violate the New York Labor Law. Current employees are often afraid to assert their rights out of fear of direct or indirect retaliation. Former employees are fearful of bringing claims because doing so can harm their employment, future employment, and future efforts to secure employment. Class actions provide class members who are not named in the Complaint a degree of anonymity, which allows for the vindication of their rights while eliminating or reducing these risks.

28.    There are questions of law and fact common to the Class which predominate over any questions affecting only individual class members, including:

a) Whether Defendants employed Plaintiff and Class Members within the meaning of the NYLL;

b) What are and were the policies, practices, programs, procedures, protocols and plans of Defendants regarding the types of work and labor for which Defendants did not pay the Class Members properly;

c) At what common rate, or rates subject to common methods of calculation, was and are Defendants required to pay Plaintiff and Class Members for their work;

d) Whether Defendants properly notified Plaintiff and Class Members of their regular hourly rates and overtime rates;

e) Whether Class Members are non-exempt workers being paid a fixed salary with no compensation at the premium rates for one and one-half times their regular rates of pay for overtime hours worked;

f) Whether Defendants paid Plaintiff and Class Members the overtime premium for all hours worked in excess of forty (40) each workweek;

g) Whether Defendants paid Plaintiff and Class Members their wages for all hours worked;

h) Whether Defendants paid Plaintiff and Class Members their wages in a timely manner as required under the NYLL;

i) Whether Defendants provided proper wage statements to Plaintiff and Class Members per requirements of the NYLL; and

j) Whether Defendants provided proper wage and hour notices to Plaintiff and Class Members per requirements of the NYLL.

## STATEMENT OF FACTS

*Plaintiff's Background*

29.     In or around June 2023, Defendants hired Plaintiff to work as a laborer for Defendants' Luxury Management NY, Inc. Throughout his employment, Plaintiff was assigned by Defendants to work on various jobsites around the Bronx. Plaintiff was employed by Defendants until in or around March 2024.

30.     At all relevant times, Defendants regularly scheduled Plaintiff to work six (6) days per week, for nine (9) hours per day from 7:00 a.m. to 4:00 p.m., for a total of fifty-four (54) hours per week. Defendants required and scheduled FLSA Collective Plaintiffs and Class Members to work similar amounts of hours every week.

31.     Defendants compensated Plaintiff at a fixed salary of $170.00 per day, or $1,020.00 per 6-day workweek, regardless of how many hours he worked each workweek. Similarly, Defendants paid FLSA Collective Plaintiffs and Class Members fixed salaries notwithstanding the hours they actually worked during the week.

*Fixed Salary Claims*

32.     Throughout his employment, Defendants compensated Plaintiff at a fixed salary of $170.00 per day, or $1,020.00 per 6-day workweek, regardless of how many hours he worked each workweek. Plaintiff was scheduled to work fifty-four (54) hours, and yet, he was not compensated overtime premiums of one and one-half the regular hourly rate, for the hours he worked in excess of forty (40) hours in each workweek. Similarly, FLSA Collective Plaintiffs and Class Members were similarly paid on a fixed salary basis without any overtime premiums for all hours worked over forty (40) each week.

33.     For twice (2) a week, Plaintiff was required to work through his lunch breaks, which were thirty (30) minutes long. The lunch breaks that he worked through would have been overtime hours, all of which were uncompensated and not covered by Plaintiff's salary. Similarly, FLSA Collective Plaintiffs and Class Members were required to work through their lunches, all of which would have been overtime hours not covered by their fixed salaries.

34.     Throughout his employment, there was never any agreement that Plaintiff's fixed salary was intended to cover the overtime hours worked in excess of forty (40) each week. Similarly, FLSA Collective Plaintiffs and Class Members never had any agreement with Defendants that their fixed salaries would cover their overtime hours.

*Frequency of Pay Claims*

35.     At all relevant times, Defendants always compensated Plaintiff's and Class Members' wages two (2) to four (4) days late. Therefore, Defendants failed to timely compensate Plaintiff and Class Members their wages within seven (7) days of which they were earned, in violation of the NYLL. Plaintiff and Class Members were laborers whose primary duties included manually intensive work on construction sites, often engaging in physical labor for over 25% of their workdays. Thus, Plaintiff and Class Members were entitled to payment on a weekly basis, as they qualify as manual workers within the definition of NYLL § 191. *See also* NYS DOL Request for Opinion Letter, RO-09-0066 (May 21, 2009).

36.     By failing to pay Plaintiff and Class Members their wages within seven (7) days during the week in which they were earned, Defendants violated NYLL § 191(1)(a)(1).[1]

---

[1] See *Vega v. CM & Assoc. Constr. Mgmt., LLC*, 2019 NY Slip Op 06459, ¶¶ 1-2, 175 A.D.3d 1144, 1145-46, 107 N.Y.S.3d 286, 287-88 (App. Div. 1st Dept.)

*Unpaid Wages Claims*

37.    Defendants outright failed to pay any weekly wages at all to Plaintiff for numerous weeks, in violation of the FLSA and the NYLL. These missing payments include, but are not limited to those owed on the following pay dates: (i) 12/01/2023, (ii) 12/15/2023, (iii) 1/26/24, (iv) 2/16/2024, (v) 3/1/2024, and (iv) 4/8/2024. Defendants similarly regularly failed to pay weekly wages to FLSA Collective Plaintiffs and Class Members.

38.    Defendants knowingly and willfully operated their business with a policy of regularly failing to compensate Plaintiff and Class Members wages for all hours worked, in violation of the NYLL. Defendants' awareness and willfulness is obvious as Defendants: (i) required and scheduled Plaintiff and Class Members to work on the unpaid workweeks, and (ii) failed to pay Plaintiff and Class Members for working these weeks.

*WTPA Violations Claims*

39.    Plaintiff and Class members never received a wage notice from Defendants. They also did not receive accurate wage statements from Defendants.

40.    In violation of the Wage Theft Protection Act ("WTPA")—incorporated into NYLL—Defendants knowingly and willfully operated their business with a policy of not providing wage notices to Plaintiff and Class Members at the beginning of their employment with Defendants.

41.    Defendants further violated the WTPA by failing to provide Plaintiff and Class Members with accurate wage statements, because wage statements that do not reflect: (1) the actual number of hours worked by the employee, (2) the overtime hours worked by the employee, and (3) the proper overtime rate, do not satisfy the requirements of the WTPA. *See Shi Yong Li v. 6688 Corp.*, 2013 U.S. Dist. LEXIS 148020, *6 (S.D.N.Y. Sept. 27, 2013) ("The wage statements

provided failed to accurately indicate the amount of time *actually* worked by tipped employees")
(emphasis added); *Copper v. Cavalry Staffing, LLC*, 132 F. Supp. 3d 460, 468 (E.D.N.Y.
2015) (holding that "the 'number of overtime hours' that appears on the wage statement should
include every hour *actually* 'worked' by the employee") (emphasis added); *Campos v. Bkuk 3
Corp.*, 2021 U.S. Dist. LEXIS 151528, *30 (S.D.N.Y. Aug. 10, 2021) ("Thus, when paystubs were
received, they were not accurate insofar as they did not accurately reflect the hours *actually*
worked") (emphasis added).

42.      In failing to provide proper wage statements and notices, Defendants have failed to

comply with the law in a manner that entails a concrete harm to an interest identified by the New

York State legislature. As one Court observed:

> Here, Plaintiffs allege that Defendants failed to furnish them with proper wage
> notices and statements, as required by NYLL §§ 195(1) and 195(3). These
> provisions were enacted as part of New York's Wage Theft Prevention Act
> ("WTPA"), N.Y. Lab. Law § 195, which sought "to expand the rights of employees
> to seek civil and criminal avenues of remedy for their employers failing to follow
> labor law appropriately and the specifications therein." N.Y. Spons. Mem., 2010
> S.B. 8380. More specifically, the New York State Assembly passed the WTPA to
> address studies showing that a large number of employees were not being paid the
> wages owed to them, and that many employers were not adequately informing their
> employees of their wages and how they are calculated in language the employees
> could understand. *Id.* The New York State Assembly opined that existing penalties
> did not adequately deter employers from paying less than the wages owed,
> and stated that the WTPA would dramatically change this by increasing penalties
> for violating employees' rights. *Id.*

*Imbarrato v. Banta Mgmt. Servs.*, 2020 U.S. Dist. LEXIS 49740, *21-22 (S.D.N.Y. March 20,
2020)

43.      Here, Defendants' failure goes beyond generating a risk of harm to Plaintiff and

Class Members. Defendants' conduct actually harmed Plaintiff and Class Members. Defendants'

failure to provide wage notices and paystubs listing all hours actually worked and rates of pay,

including overtime hours and overtime rates, deprived employees of the ability to contest the pay

provided by Defendants, allowed Defendants to hide their wrong-doing, and necessitated the current litigation to vindicate Plaintiff's and Class Members' rights. This conduct ensured Defendants' ability to further delay providing proper compensation to low wage earners entitled to protection under federal and state law. Defendants' failure to provide wage notices and wage statements to employees allowed Defendants to hide their responsibility and deprive employees of timely compensation.

44.     Had the wage statements Defendants provided to Plaintiff and Class Members accurately listed the total wages that Plaintiff and Class Members actually earned, as opposed to what they received, Defendants would have had to either (a) increase the latter to correspond with the former or (b) forthrightly acknowledge, by way of the wage statement, that the employee's wages did *not* correspond to the proper wages that Plaintiff and Class Members actually earned. Either possibility would have allowed Plaintiff and Class Members to vindicate their rights under the NYLL. The deprivation of these possibilities therefore constitutes an injury.

45.     The failure to provide proper wage notices and accurate wage statements continues to result in delayed payment of all proper wages owed to Plaintiff and Class Members. This delayed payment caused Plaintiff and Class Members to struggle to pay bills and other debts.

46.     Defendants knowingly and willfully operated their business with a policy of not providing proper wage notices and wage statements as required by NYLL.

47.     The direct effect of understating the number of hours an employee worked is to reduce the wages that employees are listed as having earned on their wage statements. The direct effect of this, in turn, is to reduce the employee earnings that the employer later reports to the IRS through the employee's W-2 form, as such information is derived from the information on employees' wage statements. See *Mills v. Mills*, 2021 Minn. Dist. LEXIS 200, *5 (Minn. Dist. Ct.,

Anoka County, Tenth Judicial District May 20, 2021) ("Petitioner's gross annual income, based on her 2020 W-21 and paystub dated 12/24/20, is $130,321.30"); *T.F. v. N.F.*, 820 N.Y.S.2d 846, 846 (Sup. Ct., Suffolk Cty., June 22, 2006) ("In 2005 the plaintiff earned $ 133,086 as reflected on his final year paystub and W-2").[1]

48.     The effect of reporting reduced wages on an employees' W-2 is, in turn, to reduce the amount of social security benefits available to the employee, as an employee's entitlement to benefits reflects how much money he or she is reported as having contributed to the social security system. *See McGauran v. Soc. Sec. Comm'n*, 2001 U.S. Dist. LEXIS 3187, *7 (N.D. Cal. March 19, 2001) ("Social security benefits are based upon the worker's earnings as reported to the [SSA] . . . [and] the worker's earnings are used to determine insured status for entitlement to retirement and to calculate cash benefit rates." (quoting Social Security Administration, Handbook § 1400 (1997)); *Coward v. Zurich Am. Ins. Co.*, 2011 U.S. Dist. LEXIS 74543, *3 (N.D. Ill. July 8, 2011) ("Under the Social Security statute, entitlement depends on 'the total of the wages paid . . . to an individual in a calendar year.'") (quoting 42 U.S.C. § 413(a)(2)(A)(ii)).

49.     "In the wake of the Supreme Court's decision in *TransUnion*, courts in this Circuit have held that plaintiffs lack standing to bring wage notice and statement claims under the NYLL absent any concrete, downstream consequences of the recordkeeping violation." *Chen v. Lilis 200 W. 57th Corp.*, No, 2023 U.S. Dist. LEXIS 38163, at 18, 2023 WL 2388728, at *8 (S.D.N.Y. Mar.

---

[1] It is true that the wages reported on W-2 forms are not always precisely identical to those listed on an employees' last paystub for the year. One reason for is, as the IRS explains, that "W-2 wages include: (i) the total amount of wages as defined in section 3401(a); (ii) the total amount of elective deferrals (within the meaning of section 402(g)(3)); (iii) the compensation deferred under section 457; and (iv) the amount of designated Roth contributions (as defined in section 402A)." https://www.irs.gov/pub/irs-drop/rp-19-11.pdf. However, the possibility, that wages listed on a W-2 might be affected by such considerations does not change the fact that the base wages on the W-2 are derived from paystubs. The paystub processing service *realcheckstubs* explains:  "A pay stub contains crucial information that assists in calculating W2 wages. Paystub provides gross wages, deductions, taxes withheld, and other income-related data. Individuals gather the necessary figures required for accurate W2 calculation by referring to the pay stub." https://www.realcheckstubs.com/blog/paystubs/6-steps-how-to-calculate-w-2-wages-from-paystub.

7, 2023). "On the other hand, 'allegations' that go 'beyond asserting a bare statutory violation and sufficiently allege concrete harm' resulting from 'the underpayment of wages' pass muster because 'monetary injury is a concrete harm sufficient for purposes of Article III standing.'" *Thompson v. Elev8 Ctr. N.Y.*, LLC, 2023 U.S. Dist. LEXIS 122504, *21 (S.D.N.Y. July 17, 2023) (quoting *Mateer v. Peloton Interactive, Inc.*, 2022 U.S. Dist. LEXIS 125017, at *4 2022 WL 2751871, at *2 (S.D.N.Y. July 14, 2022)).

50.     Here, it is clear that Defendants' failure to provide Plaintiff and Class Members with accurate wage statements entailed "concrete, downstream consequences" involving monetary injury. Had the number of hours been accurately reported for a given pay period, Defendant's automatic payroll system would have correspondingly increased the wages due for that period, which in turn would have been reflected in the W-2s that Defendants submitted to the IRS on behalf of Plaintiff and Class Members. That, in turn, would have increased Plaintiff's and Class Members' entitlement to social security benefits. Because the inaccuracy prevented this outcome, it constitutes an injury sufficient to provide Plaintiff with Article III standing.

51.     Courts agree that the misreporting of wages constitutes a concrete injury cognizable under Article III:

> The Seventh Circuit in *Calderon* squarely addressed FICA standing. The plaintiffs in *Calderon* were former employees alleging the employer failed to pay their FICA taxes. 999 F.2d at 1105-06. The Seventh Circuit found that the plaintiffs lacked standing to compel the employer to pay their FICA taxes because "[b]enefits do not. . . depend on whether the employer actually paid the taxes." *Id*. at 1106. Plaintiffs could, however, enforce FICA's reporting requirement because it is the reporting of income that triggers benefits, and losing benefits is an injury under *Lujan*. *Id*. Whether the employer in *Calderon* made FICA payments on the plaintiffs' behalf had no bearing on the plaintiffs' entitlement to benefits. *Id*. "[T]he plaintiff's real interest lies in ensuring that the [employer] make the proper reports of their income." *Id*.

*Coward*, 2011 U.S. Dist. LEXIS 74543, at *3-4.

52.    The case at bar is somewhat different from *Coward* inasmuch as Defendants actually underpaid Plaintiff and other employees rather than merely misreporting their income. But this distinction has no bearing on the question of Article III standing, since it is still the case that "it is the reporting of income that triggers benefits, and losing benefits is an injury." *Id*. Plaintiff and Class Members lost benefits by virtue of how Defendants reported their income, and how Defendants reported employees' income was the direct outcome of the inaccuracies in employees' wage statements. That is why "Plaintiffs have standing to enforce the statutory reporting requirements" imposed by the WTPA. *Calderon v. Witvoet*, 999 F.2d 1101, 1106 (7th Cir. 1993).

53.    Whether or not any Class Members are presently eligible for social security benefits is legally immaterial. *See id*. ("Although only citizens and aliens residing in the United States may receive benefits, 42 U.S.C. § 402(t), plaintiffs may eventually fulfill this requirement and therefore are entitled to keep their Social Security accounts accurate.").

54.    The *Calderon* court stressed that an employee's interest in ensuring that an employer properly report the employee's income is amplified by the difficulty of persuading the government to correct errors:

> The practical difficulty is that eligibility for Social Security benefits presumptively depends on reports that employers send to the government. A worker who seeks credit for unreported income bears the burden of proof, 42 U.S.C. § 405(c)(3), (4), which will be hard to carry if the employer has not furnished the customary documentation. The government believes employers who report earnings, because these reports are costly to make--they entail paying a substantial tax. The government tends not to believe undocumented claims by employees, because these claims are essentially costless yet could establish entitlement to large pensions or disability benefits.
>
> All of this means that the plaintiffs' real interest lies in ensuring that the Witvoets make the proper reports of their income.

*Id.*

55.    Here, the problem is not merely challenging but insurmountable. Plaintiff and Class Members cannot even attempt to have their earnings report corrected because Defendants *did* report what they actually paid Plaintiff and Class Members. The problem, rather, is that Plaintiff and Class Members were underpaid. Yet the ultimate effect is the same—reduced social security eligibility. Because "[u]nder the Social Security statute, entitlement depends on 'the total of the wages paid . . . to an individual in a calendar year,'" Plaintiff was irreversibly injured with respect to his social security benefits as soon as Defendants sent his W-2 to the IRS. *Coward*, 2011 U.S. Dist. LEXIS 74543, at *3 (N.D. Ill. July 8, 2011) (quoting 42 U.S.C. § 413(a)(2)(A)(ii)).

57.    Defendants knowingly and willfully operated their business with a policy of not providing proper wage and hour notices to Plaintiff and Class Members, in violation of the NYLL.

## STATEMENT OF CLAIM

## COUNT I

## VIOLATIONS OF THE FAIR LABOR STANDARDS ACT

58.    Plaintiff realleges and incorporates all the above allegations as if fully set forth herein.

59.    At all relevant times, Defendants were and continue to be employers engaged in interstate commerce and/or the production of goods for commerce within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207(a). Further, Plaintiff and FLSA Collective Plaintiffs are covered individuals within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207(a).

60.    At all relevant times, Defendants employed Plaintiff and FLSA Collective Plaintiffs within the meaning of the FLSA.

61.    At all relevant times, Defendants had a policy and practice of willfully failing to pay overtime compensation at the statutory rate of one and one-half times the regular rate of pay

to Plaintiff and FLSA Collective Plaintiffs for their hours worked in excess of forty (40) hours per workweek, due to fixed salary.

62.     At all relevant times, Defendants had a policy and practice of failing to pay wages for all hours worked.

63.     Defendants failed to properly disclose or apprise Plaintiff and FLSA Collective Plaintiffs of their rights under the FLSA.

64.     As a direct and proximate result of Defendants' willful disregard of the FLSA, Plaintiff and FLSA Collective Plaintiffs are entitled to liquidated (i.e., double) damages pursuant to the FLSA.

65.     Due to the intentional, willful, and unlawful acts of Defendants, Plaintiff and FLSA Collective Plaintiffs suffered damages in an amount not presently ascertainable of: (i) unpaid wages, including overtime compensation, due to fixed salary, and (ii) unpaid wages, plus an equal amount as liquidated damages.

66.     Records, if any, concerning the number of hours worked by Plaintiff and FLSA Collective Plaintiffs and the actual compensation paid to Plaintiff and FLSA Collective Plaintiffs are in the possession and custody of Defendants. Plaintiff intends to obtain these records by appropriate discovery proceedings to be taken promptly in this case and, if necessary, will then seek leave of Court to amend this Complaint to set forth the precise amount due.

67.     Plaintiff and FLSA Collective Plaintiffs are entitled to an award of their reasonable attorneys' fees and costs pursuant to 29 U.S.C. § 216(b).

## COUNT II

## VIOLATIONS OF THE NEW YORK LABOR LAW

68.     Plaintiff realleges and incorporates all the above allegations as if fully set forth herein.

69.     At all relevant times, Plaintiff and Class Members were employed by Defendants within the meaning of the NYLL §§ 2 and 651.

70.     At all relevant times, Defendants willfully violated Plaintiff and Class Members' rights by failing to pay wages in the lawful amount for all hours worked, including those in excess of forty (40) hours worked each week, due to fixed salary.

71.     Defendants willfully violated Plaintiff's and Class Members' rights by failing to pay wages for all hours worked, as required by the NYLL.

72.     Defendants willfully violated Plaintiff's and Class Members' rights by failing to timely pay their weekly wages, as required by the NYLL § 191(a)(1).

73.     Defendants knowingly and willfully failed to provide proper wage and hour notices to Plaintiff and Class Members, as required by the NYLL § 195(1).

74.     Defendants knowingly and willfully failed to provide proper wage statements to Plaintiff and Class Members with every wage payment, as required by the NYLL § 195(3).

75.     Due to Defendants' NYLL violations, Plaintiff and Class Members are entitled to recover from Defendants their unpaid overtime compensation due to fixed salary, unpaid wages, damages for unreasonably delayed payments, statutory penalties, liquidated damages, reasonable attorneys' fees, and costs and disbursements of the action, pursuant to New York Labor Law.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, on behalf of himself, FLSA Collective Plaintiffs, and Class

Members, respectfully requests that this Court grant the following relief:

a.  A declaratory judgment that the practices complained of herein are unlawful under the FLSA and the NYLL;

b.  An injunction against Defendants and their officers, agents, successors, employees, representatives and any and all persons acting in concert with them as provided by law, from engaging in each of the unlawful practices, policies and patterns set forth herein;

c.  An award of unpaid wages, due under the FLSA and the NYLL;

d.  An award of unpaid wages, including overtime compensations, due to fixed salary, pursuant to the FLSA and the NYLL;

e.  An award of statutory penalties, as a result of Defendants' failure to comply with the NYLL wage notice and wage statement requirements;

f.  An award of liquidated and/or punitive damages, as a result of Defendants' willful failure to pay proper wages pursuant to the FLSA;

g.  An award of liquidated damages and interest for each late payment of wages pursuant to NYLL § 191(1)(a)(ii);

h.  An award of liquidated and/or punitive damages, as a result of Defendants' willful failure to pay proper wages pursuant to the NYLL;

i.  An award of pre-judgment and post-judgment interest, costs and expenses of this action together with reasonable attorneys' and experts' fees and statutory penalties;

j.  Designation of Plaintiff as Representative of the FLSA Collective Plaintiffs;

k.  Designation of this action as a class action pursuant to F.R.C.P. 23;

l.  Designation of Plaintiff as Representative of the Class; and

m.    Such other and further relief as this Court deems just and proper.

## **JURY DEMAND**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands trial by jury on all issues so triable as of right by jury.

Dated: December 24, 2024                         Respectfully submitted,
      New York, New York

                                       By:    */s/ C.K. Lee*
                                              C.K. Lee, Esq. (CL 4086)

                                            **LEE LITIGATION GROUP, PLLC**
                                            148 West 24th Street, Eighth Floor
                                            New York, New York 10011
                                            Tel.: (212) 465-1188
                                            Fax: (212) 465-1181

                                            *Attorneys for Plaintiff,*
                                            *FLSA Collective Plaintiffs,*
                                            *and the Class*